UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN PRESTON, directly and derivatively, as shareholder of ELECTROMAGNETICS CORPORATION, a Delaware corporation, and CONTINUUM ENERGY TECHNOLOGIES, LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> CHRISTOPHER NAGEL, and IDL DEVELOPMENT, LLC, <br><br> Defendants, <br><br> and <br><br> ELECTROMAGNETICS CORPORATION, a Delaware corporation, <br><br> Nominal party. | CIVIL ACTION <br> No. 15-13592-WGY |

YOUNG, D.J.                                    February 9, 2016

**MEMORANDUM OF DECISION**

## I.   INTRODUCTION

On November 13, 2015 this Court took under advisement the Plaintiffs' motion to remand this action to the Superior Court of Massachusetts sitting in and for the County of Middlesex.

The Plaintiffs -- John Preston, directly on his own behalf, and derivatively, as shareholder of Electromagnetics Corporation ("ELC"), a Delaware corporation, and Continuum Energy

1

Technologies, LLC ("CET"), a Delaware limited liability company -- commenced the current action by filing a verified complaint in the Massachusetts Superior Court.  Notice Removal, Ex. 1, part 1, Verified Compl. Jury Demand ("Compl."), ECF No. 1-3; State Court R., Ex. A, part 1, Docket Report 1, ECF No. 39-1. The complaint alleged fifteen counts against Christopher Nagel, IDL Development, LLC ("IDL") (collectively the "Defendants"), and ELC,[1] including declaratory judgment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, tortious and intentional interference with contract and advantageous business relations, conversion, unfair and deceptive trade practices under Mass. Gen. Laws 93A, constructive trust, and injunctive relief.  Compl. ¶¶ 89-168. Upon joint request by both parties, the Regional Administrative Justice for Middlesex County assigned Justice Peter B. Krupp to preside over the case proceedings.  Docket Report 10, 13.

On October 16, 2015, the Defendants filed a Notice of Removal.  Notice Removal, ECF No. 1.  The same day, the Defendants answered the Plaintiffs' complaint and counterclaimed seeking declaratory judgment for non-infringement of eleven ELC

---

[1] For simplicity's sake, the Court refers to Nagel and IDL as the "Defendants," excluding ELC, since only Nagel and IDL removed this action to federal court.

patents by Nagel and IDL.  Notice Removal, Ex. 3, Ans.

Countercl. Defs.' Christopher Nagel IDL Development, LLC Pls.'

Verified Compl. Jury Demand ("Defs.' Ans."), ECF No. 1-3.  At

the time of that filing, several motions filed by the Plaintiffs

were pending in state court, Docket Report 2-3, and Justice

Krupp had already issued two orders for preservation of an

encrypted hard drive that was in Nagel's possession and with

which Nagel had interfered.[2]  Mem. Supp. Pls.' Mot. Remand

("Pls.' Mem. Remand"), Ex. 3, Joint Request Special Assignment

Hon. Peter B. Krupp, Ex. B, Mem. Order Regarding Preservation

Encrypted Hard Disk Briefing Schedule ("September 21 Order"),

ECF No. 33-3; id., Ex. 6, Mem. Order Pls.' Emergency Mot. Compel

Compliance Court Order Regarding Production Encrypted Hard Disk,

Defs.' Cross-Mot. Protect Privileged Confidential Docs.

("September 28 Order"), ECF No. 33-6.  On November 5, 2015,

twenty days after the Defendants requested removal of the case

to this Court, the Plaintiffs filed a motion to remand.  Pls.'

Mot. Remand, ECF No. 32.  The parties fully briefed the issue

---

[2] Following the removal of the action to this Court, the
Plaintiffs renewed their pending-in-state-court Motion for
Further Orders and Sanctions seeking to copy and image the
information on the hard disk in Nagel's possession.  Pls.'
Request Status Conference Earliest Available Date 4, ECF No. 14.
On October 29, 2015, the Defendants filed a memorandum in
opposition to the Plaintiffs' motions that had been filed in
Superior Court prior to the notice to remove.  Defs.' Prelim.
Opp'n Pls.' "Emergency" Mots. Prelim. Inj., Expedited Disc.
Immediate Return Property ("Defs.' Opp'n Prelim."), ECF No. 24.

and the Court held an oral hearing on the Plaintiffs' motion on November 12, 2015.  Pls.' Mem. Remand; Defs.' Opp'n Pls.' Mot. Remand ("Defs.' Opp'n"), ECF No. 38; Mem. Electromagnetics Corporation Connection Pls.' Mot. Remand, ECF No. 37; Tr. Hearing, ECF No. 40.

## II.  BACKGROUND

Answering the questions of law inherent in the adjudication of the parties' motions requires giving an overview of the factual background as recited in the Plaintiffs' complaint.  The latter is by no means an easy task, since the complaint is far from a model of clarity.  It is, however, the Court's role to fathom some order out of chaos.

The underlying dispute has its roots in the unravelling of a lengthy business relationship between Preston and Nagel.  The relationship, which dated to the late 1980s, resulted in the joint start-up of several successive companies with the intent of exploiting a technology developed by Nagel that converted certain waste materials into marketable products such as industrial gases, metal alloys, and ceramics.  Compl. ¶ 18. After the first jointly-founded company failed to take off, id. ¶ 19, part of its assets were sold to a second company and later assigned to Nagel.  Id. ¶¶ 20-21.

On June 3, 1999, Preston and Nagel formed both ELC[3] and CET[4] as "affiliated companies" with "overlapping ownership and management[.]"  Id. ¶¶ 24-25.  Preston and Nagel are both shareholders of ELC, and its only two directors.  Id. ¶¶ 12, 15, 74.  As of July 1, 2015, Preston was Vice-President of ELC while Nagel was its President.  Id. ¶ 75.  Upon formation of ELC, Nagel assigned these assets -- characterized by the Plaintiffs as "intellectual property rights . . . including the ability to patent technologies developed within certain fields[,]" id. ¶ 23 -- to ELC.

Nagel and Preston formed CET with the purpose of "researching, developing, and attempting to commercialize technology covered and protected by various patents titled to ELC[.]"  Id. ¶ 25.  According to a cross-licensing agreement between ELC and CET ("ELC/CET License Agreement"), CET acquired a perpetual, royalty-free license to ELC's "most valuable intellectual property rights acquired by ELC (including, without limitation, the use of electromagnetic chemistry to modify and/or manufacture elements)."  Id. ¶¶ 26-27; Pls.' Mem. Remand,

---

[3] In anticipation of forming ELC and CET, Preston and Nagel had also entered into a Share Purchase Agreement related to the purchase and sale of shares in CET that included a confidentiality agreement.  Compl. ¶ 22.

[4] CET was initially known as Atomic Ordered Materials, later changing its name to the current one.  Compl. ¶ 24.

Ex. 1, License Collaboration Agreement ("ELC/CET License Agreement") 4, ECF No. 33-1. "ELC retained the right to develop the intellectual property for waste related and certain other product applications." Id. ¶ 27. This set-up allowed CET to "exploit ELC's patents and other intellectual property" and permitted "ELC to continue to obtain additional patents that CET filed based on advancements on its intellectual property." Id. ¶ 30. Under the ELC/CET License Agreement, ELC and CET also agreed to non-compete and confidentiality provisions. Id. ¶ 29. Nagel also agreed to various confidentiality clauses and protection for ELC's and CET's proprietary information as a signatory of various other employee and operating agreements with ELC and CET. Id. ¶¶ 36-41, 44-54.

Following unrelated third-party litigation, the relationship between Preston and Nagel deteriorated. Id. ¶¶ 60-61. Nagel formed IDL on December 19, 2014, and resigned as managing member of CET effective January 16, 2015. Id. ¶¶ 62-63. In May 2015, Nagel circulated a proposal to CET's shareholders that contemplated a "complete restructuring of the [existing] business entanglements" and a termination of the ELC/CET License Agreement, to be replaced with a more narrow "technology/patent agreement." Id. ¶¶ 64-65. According to the Plaintiffs, the proposal reflects that "Nagel knew he needed CET's permission to carry out his proposed platinum venture,

because he was planning to use ELC's licensed intellectual property to do so." Id. ¶ 66.

The Plaintiffs plead that "Nagel and IDL are utilizing and exploiting without a license the intellectual property rights of ELC and CET, as licensee," that Nagel has disclosed to IDL confidential and proprietary information belonging to ELC and CET, that IDL has raised money "to pursue the manufacture of platinum using ELC's technology[,]" that Nagel and IDL are using electromagnetic chemistry to "modify elements and to manufacture platinum[,]" this being "the core of all of the most valuable intellectual property developed by ELC and CET" and that "Nagel and IDL are competing with ELC and CET[.]" Id. ¶¶ 67-69.

Relatedly, the Plaintiffs allege that, when Nagel left CET for IDL, he took with him from CET's headquarters documents and an encrypted hard drive that included experimental runs and other technical data that is "essentially irreplaceable without Nagel's cooperation," hired CET's entire team of researchers, rendering CET unable to conduct experiments. Id. ¶¶ 70, 72-73. According to the Plaintiffs, in an effort to have the patents lapse and allow "ELC's patented technologies"(including those within the scope of the ELC/CET License Agreement) to be used by Nagel and IDL, Nagel also directed ELC to fail to pay its patent fees, leaving ELC's license to CET "worthless" and himself "free to do as he wishes with the intellectual property[,]" and

removed Preston from ELC's officer list in violation of ELC's

by-laws in order to advance his wrongful conduct.  Id. ¶¶ 59-60,

71, 74-88.

## III. ANALYSIS

The Defendants removed the case to this Court under 28

U.S.C. §§ 1331 and 1338, as authorized by 28 U.S.C. §§ 1441,

1446, and 1454.  Notice Removal 1.  The Defendants asserted that

removal of the case was proper because: 1) questions of law

arising under an Act of Congress related to patents were raised

in both the Plaintiffs' complaint and the Defendants'

counterclaims, and 2) ELC is a nominal defendant that need not

join or consent to removal under 28 U.S.C. § 1446(2)(A).  Id. at

3-4.

The Plaintiffs make several counterarguments to support

their request for remand: 1) ELC is not a nominal defendant but

an indispensable party for purposes of removal; 2) the Court

does not have original jurisdiction over the Plaintiffs' claims

because they do not arise under federal law; 3) the Defendants'

declaratory judgment counterclaims do not present a justiciable

case or controversy and, even if they do, the Court ought

decline to assert jurisdiction; and 4) even if the Court decides

to exercise jurisdiction over the Defendants' counterclaims, it

lacks supplemental jurisdiction over the Plaintiffs' claims as

they are not part of the same case or controversy.[5]   Pls.' Mem.
Remand 3.

### A. Standard of Review

The Court navigates the jurisdictional determination
mindful that, although asked to resolve questions of patent law
subject to the Federal Circuit's exclusive jurisdiction under 28
U.S.C. § 1295, where the analysis relates to "procedural
issue[s] not unique to patent law," the applicable law is that
of the First Circuit.  Versata Software, Inc. v. Callidus
Software, Inc., 780 F. 3d 1134, 1136 (Fed. Cir. 2015).  In the
First Circuit, a removing defendant bears the burden of proving
that the federal court has subject matter jurisdiction.  Danca
v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir.
1999).  A defendant must "make a 'colorable' showing that a
basis for federal jurisdiction exists."  Id. (citation omitted).

### B. Removal Under Section 1454

The Defendants assert that removal is proper under both the
general removal statute, 28 U.S.C. § 1441, and the patent-
specific one, 28 U.S.C. § 1454.  This Court does not address the

---

[5] The Plaintiffs urge the Court to decline to exercise
supplemental jurisdiction because the Plaintiffs' state-law
claims predominate over the Defendants' counterclaims arising
under federal jurisdiction.  Id.  In the event the Court retains
jurisdiction over the Defendants' counterclaims but remands the
Plaintiffs' claims, the Plaintiffs also request the Court stay
its proceedings because proceedings regarding this case are
already under way in state court.  Id.

propriety of removal under the general removal statute since it

concludes that removal is proper under Section 1454.  This

latter statute was newly added to the body of federal

jurisdiction statutes as part of the America Invents Act

("Act").  Leahy-Smith America Invents Act, Pub. L. No. 112-29,

125 Stat. 284 (2011).  The removal statute provides that

> (a) In General. — A civil action in which any party
> asserts a claim for relief arising under any Act of
> Congress relating to patents . . . may be removed to the
> district court of the United States for the district and
> division embracing the place where the action is
> pending.
>
> (b) Special Rules. — The removal of an action under this
> section shall be made in accordance with section 1446,
> except that if the removal is based solely on this
> section—
> (1) the action may be removed by any party; and
> (2) the time limitations contained in section 1446(b)
> may be extended at any time for cause shown.
>
> (c) Clarification of Jurisdiction in Certain Cases.—
> The court to which a civil action is removed under this
> section is not precluded from hearing and determining
> any claim in the civil action because the State court
> from which the civil action is removed did not have
> jurisdiction over that claim.
>
> (d) Remand. — If a civil action is removed solely under
> this section, the district court—
> (1) shall remand all claims that are neither a basis for
> removal under subsection (a) nor within the original or
> supplemental jurisdiction of the district court under
> any Act of Congress; and
> (2) may, under the circumstances specified in section
> 1367(c), remand any claims within the supplemental
> jurisdiction of the district court under section 1367.

28 U.S.C. § 1454.

The Act also amended 28 U.S.C. § 1338(a), the statute conferring on district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents," to provide that "[n]o State court shall have jurisdiction over any claim for relief under any Act of Congress relating to patents[.]" 28 U.S.C. § 1338(a). Together with the amendment to 28 U.S.C. § 1295(a)(1), which extended the Federal Circuit's jurisdiction to "compulsory counterclaim[s] arising under . . . any Act of Congress relating to patents," these patent-related changes are commonly known as the "Holmes Group fix." Joe Matal, A Guide to the Legislative History of the America Invents Act: Part II of II, 21 Fed. Cir. B.J. 539, 539 (2012). This "fix" was adopted in response to an earlier decision by the Supreme Court, which held that a counterclaim by a defendant cannot serve as the basis for "'arising under' jurisdiction" under 28 U.S.C. § 1295(a)(1). See Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 831 (2002);[6] Matal, supra at 540. Rejecting Holmes, the three statutes "provide[d] federal courts . . . with a broader range of jurisdiction; that is, with jurisdiction over claims arising

---

[6] According to one of the reports of the House Judicial Committee ("Committee"), the members of the Committee were concerned that the Holmes decision would "lead to an erosion in the uniformity or coherence in patent law" built up since the creation of the Federal Circuit. Matal, supra (citing H.R. REP. NO. 109-407, at 5 (2006)).

under the patent laws _even_ when asserted in counterclaims."
_Vermont_ v. _MPHJ Tech. Investments, LLC_, 803 F. 3d 635, 644 (Fed.
Cir. 2015).

In particular, under Section 1454, removal became possible
based solely on a defendant's counterclaims and also without
requiring all the defendants to consent to removal, as is
otherwise mandated by Section 1446(b)(2)(A), "[w]hen a civil
action is removed solely under [the general removal statute, 28
U.S.C. § 1441(a)]." First, Section 1446 imposes no "unanimity"
requirement when an action is removed under Section 1454.
Second, the Court interprets Section 1454's statement that "any
party" may remove to apply to any one party and, thus, to fewer
than all defendants. _Cf._ _California Pub. Employees' Ret. Sys._
v. _WorldCom, Inc._, 368 F.3d 86, 103 (2d Cir. 2004)(holding that,
unlike Section 1441(a), the bankruptcy removal statute, 28
U.S.C. § 1452, which provides that "a party may remove" a
bankruptcy action to the district court, does not require
unanimity of defendants for removal because any one "party" can
remove). In sum, although both parties have expended
substantial ink in arguing whether ELC qualifies as a "nominal"
party, this Court need not resolve this issue since it concludes
that ELC's consent was not required for removal of the action by
Nagel and IDL under Section 1454.

## C. "Arising under" jurisdiction

Section 1454 permits the Defendants to remove the action to federal court on the basis that either the Plaintiffs' claims or the Defendants' counterclaims "arise under" an Act of Congress related to patents. 28 U.S.C. § 1454; MPHJ, 803 F. 3d at 644. As a preliminary matter, for "linguistic consistency," this Court interprets the term "arising under" in Section 1454 in a manner similar to the more established interpretation in Sections 1331 and 1338 of the same act. See Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). This term of art refers most often to "federal law creat[ing] the cause of action asserted." Id.

Among claims created by state law, however, there is a "'special and small category' of cases" within the scope of the "arising under" federal jurisdiction. Id. (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)). For a claim to fit within this category, a federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at 1065 (citing Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 313-14 (2005)).

1. Plaintiffs' Claims

The Plaintiffs' claims originate in state law, making the four-part Grable test the appropriate threshold for the "arising under" jurisdiction analysis. In their memorandum to the Court,

13

the Defendants argue that three of the Plaintiffs' claims "arise
under" patent laws: Counts XI (intentional interference with
business relations), XII (conversion), and XIV (constructive
trust).[7]  Defs.' Opp'n 10.

Before conducting any substantive Grable analysis, the
Court must decide whether the counts in question make any
allegations about patents at all.[8]  Central to the Defendants'
request for removal is their contention that the term
"intellectual property" in the counts identified by the
Defendant in the Plaintiffs' complaints, in particular with
respect to the intellectual property owned by ELC, (as opposed
to CET), refers exclusively to patents.[9]  Defs.' Opp'n 10-12.
Count XI, ELC's direct and derivative claim against the
Defendants, alleges that Nagel and IDL interfered with the
ELC/CET License Agreement "through [their] improper motive . . .

---

[7] As a result of independent analysis, the Court agrees that
the Plaintiffs' other counts could be resolved without reaching
issues of federal patent law and, thus, do not "arise under"
patent law.  Consequently, the Court's analysis focuses only on
the three counts identified by the Defendants.

[8] A patent law issue is not "necessarily raised" if a court
could find that the plaintiff "is entitled to relief . . .
without ever reaching a patent law issue." NeuroRepair, Inc. v.
The Nath Law Grp., 781 F.3d 1340, 1344 (Fed. Cir. 2015).  A
claim that makes no patent law allegations whatsoever does not,
ipso facto, necessarily raise any issues of patent law.

[9] Each of the counts also includes claims by CET, however
these are not subject to the Defendants' contention that they
"arise under" federal patent law.

to abscond with and exploit the intellectual property owned by ELC[,] . . . causing ELC to breach agreements with CET, [and] directing ELC to allow its intellectual property which is licensed to CET to lapse by failing to pay maintenance fees[.]" Compl. ¶ 149.  In Count XII, CET and Preston, derivatively, on behalf of ELC, allege that Nagel and IDL "absconded with the value of and, therefore, converted ELC's intellectual property" and requests the return of this intellectual property.  Id. ¶¶ 152-53.  Lastly, in Count XIV, Preston, derivatively, on behalf of ELC alleges that as a result of Nagel's misconduct, including "absconding with and exploiting ELC's intellectual property at IDL and IDL's wrongful actions, ELC is entitled to a constructive trust of all such intellectual property, as well as any research, development, advancements on, derivations of, and any patent or other intellectual property filings[.]"  Id. ¶ 162.

In support of remand, the Plaintiffs argue that the term "intellectual property" in the complaint actually refers to "the theft of trade secrets and confidential proprietary information[.]"  Pls.' Mem. Remand 10; Notice Removal ¶ 5.  At the motion hearing, the Plaintiffs explained that the "intellectual property" at issue is the information stored on the encrypted hard drive that Nagel took with him, "specifically experimental run plans."  Tr. Hearing 3:20-4:1.

In opposition, the Defendants argue that the Plaintiffs have acknowledged that ELC's intellectual property consists solely of "patented technologies" and that the Plaintiffs have made this clear by stating in their complaint that ELC serves as a "repository for patents that CET has developed." Defs.' Opp'n 11 (citing Compl. ¶¶ 25, 60).

Upon review, the Court reluctantly gives more credence to the Plaintiffs' arguments, recognizing that the term "intellectual property" is at times ambiguously used in the complaint. To begin, the ELC/CET License Agreement, incorporated by reference in the complaint, defines ELC's intellectual property rights broadly, as "including but not limited to patents and applications, trademarks and trade secrets." ELC/CET License Agreement 4. The core of that agreement appears to concern ELC's patents, some of them developed by CET and filed in the name of ELC. Compl. ¶¶ 25, 30.[10] The Plaintiffs also generally plead that Nagel and IDL are "utilizing and exploiting" ELC's intellectual property rights licensed to CET and that Nagel disclosed to IDL "confidential

---

[10] Contrary to the Defendants' argument, though, the Plaintiffs do not allege that ELC serves solely as repository for CET's patents. In the same breath the Plaintiffs allege that ELC serving as repository for patents allowed "CET to exercise its rights under the [ELC/CET] License Agreement to exploit ELC's patents and other intellectual property." Compl. ¶ 30 (emphasis added).

and proprietary information" belonging to ELC and CET, without
specifically mentioning patents.  Id. ¶ 67.  This general
pleading comes on the back of the Plaintiffs' two-fold
allegations in the complaint: first, the Plaintiffs allege that
Nagel raised funds for IDL, recruited CET researchers to IDL and
removed items from CET premises such as experimental runs and
other sensitive data, supporting the Plaintiffs' assertion that
the Defendants are utilizing and exploiting intellectual
property belonging to ELC and licensed to CET for the production
of platinum, id. ¶¶ 67-70, 72-73; second, the Plaintiffs take
issue with Nagel's interference with ELC's corporate structure,
which allowed him to direct ELC to stop protecting its patents
through the payment of patent fees, leaving the ELC/CET License
Agreement "worthless" -- all part of Nagel's plan to "attempt to
practice ELC's patented technologies."[11]   Id. ¶¶ 59-60, 71, 74-
88.  These strands of allegations are seemingly distinct,
leading the Court to the conclusion that the Defendants' only
transgression with respect to patents alleged to have already
taken place is the failure to pay patent fees.

What is this other ELC intellectual property that the
Defendants are already exploiting?  The Plaintiffs explained in

---

[11] The Defendants, however, when citing the Plaintiffs'
allegation about Nagel practicing ELC's patented technologies,
forget to cite the preceding words stating that Nagel "plan[s]
to attempt" to practice said technologies.  Compl. ¶ 60.

their brief and at oral argument that ELC's intellectual

property taken and exploited by the Defendants is not patents

but rather trade secrets and confidential proprietary

information licensed under the ECT/CET License Agreement

(specifically experimental runs).[12]  On the face of the

complaint, however, the Court cannot conclude that the

experimental runs on the encrypted hard drive are the relevant

intellectual property, as the Plaintiffs have argued, since the

complaint never specifically alleges the exact nature of the

intellectual property at issue.[13]  Neither can the Court,

however, draw the opposite conclusion, as the Defendants urged

---

[12] Although the Court concluded that ELC's intellectual property that Nagel and IDL are already exploiting is non-public, the complaint suggests at times that the relevant intellectual property and trade secrets or confidential information are distinct categories.  See, e.g., Compl. ¶¶ 120, 131 (Nagel "usurp[ed] and abscond[ed] with confidential and proprietary information and valuable intellectual property belonging to ELC"; Nagel has absconded with the "confidential, proprietary and trade secret information and intellectual property belonging to ELC").

[13] The Plaintiffs argue persuasively that "usurping and absconding with the valuable intellectual property assets" of ELC and CET or "diverting the intellectual property" of ELC and CET cannot refer to patents, which are inherently public.  Pls.' Mem. Remand 10. This is not, however, the Plaintiffs' winning argument since other allegations in the complaint contradict the above argument.  See Compl. ¶ 87 (the Plaintiffs plead that Nagel "cause[d] ELC to allow its intellectual property to lapse so Nagel can abscond with their value and leave ELC with no recourse," where the only intellectual property that the Plaintiffs allege the Defendants allowed to lapse are ELC's patents).

at the motion hearing.  The Defendants argued that the
experimental runs on the encrypted hard drive are trade secrets
of CET, or are already patented,[14] and thus cannot constitute the
disputed intellectual property.  Tr. Hearing 12:19-25.  At the
very least, the ELC/CET License Agreement contemplates the
licensing of trade secrets by ELC to CET.

In any event, the Court need not determine the exact nature
of the intellectual property at issue.  It suffices to conclude
that the Defendants have not met their burden of proving that
any of the three counts ask for relief in any way related to the
infringement of ELC's patents and, thus, that they "arise under"
patent law.

### 2. Defendants' Counterclaims/Declaratory Judgment Act

The Defendants' filed counterclaims requesting a
declaratory judgment that the patents are not infringed.  Such
claims, of course, arise under patent law.  In support of their
motion to remand, however, the Plaintiffs argue that the
Defendants' counterclaims do not present a justiciable
controversy within the jurisdiction of this Court.  Pls.' Mem.
Remand 13.  The Court thus proceeds to determine whether it has

---

[14] The Plaintiffs allege that if the encrypted hard drive
were destroyed, its technical contents would be "lost forever,"
Compl. ¶ 73, which would not be the case if the information were
already patented.

jurisdiction to issue such declaratory judgment under the
Declaratory Judgment Act, 28 U.S.C. § 2201(a).

The Declaratory Judgment Act does not "extend" a federal
court's jurisdiction; a separate statute must confer
jurisdiction over the action.  Medtronic, Inc. v. Mirowski
Family Ventures, LLC, 134 S. Ct. 843, 848-49 (2014).  Section
2201(a) provides that "[i]n a case of actual controversy within
its jurisdiction" a federal court "may declare the rights and
other legal relations of any interested party seeking such
declaration."  28 U.S.C. § 2201(a).  The Supreme Court has
explained that the term "case of actual controversy" refers to
the types of cases or controversies justiciable under Article
III of the United States Constitution.  MedImmune, Inc. v.
Genentech, Inc., 549 U.S. 118, 126-27 (2007) (citing Aetna Life
Ins. Co. v. Haworth, 300 U.S. 240 (1937)).  For a declaratory
judgment action to satisfy the case or controversy requirement,
"the facts alleged, under all the circumstances, [must] show
that there is a substantial controversy, between parties having
adverse legal interests, of sufficient immediacy and reality to
warrant the issuance of a declaratory judgment."  Id. at 127
(citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312
U.S. 270, 273 (1941)).

Before 2007, to satisfy this standard, the Federal Circuit
applied a two-prong inquiry to determine the existence of

declaratory judgment jurisdiction.  See Cat Tech LLC v.

TubeMaster, Inc., 528 F.3d 871, 879 (Fed. Cir. 2008).  The first

prong examined whether the "patentee's conduct created a

reasonable apprehension of suit on the part of the declaratory

judgment plaintiff."  Id. (citation and internal quotation marks

omitted).  The second prong "focused on the declaratory judgment

plaintiff's conduct, and examined whether there had been

meaningful preparation to conduct potentially infringing

activity."  Id. (citation and internal quotation marks omitted).

In 2007, the Supreme Court reassessed the reasonable

apprehension standard.  See MedImmune, 549 U.S. at 126-36.  The

Federal Circuit has interpreted the MedImmune decision to have

rejected the "unduly restrictive" reasonable-apprehension-of-

suit test as contradictory to existing Article III case and

controversy jurisprudence, and replaced it with an assessment of

"all circumstances" going beyond whether the declaratory

judgment plaintiff had a reasonable apprehension of suit.  Cat

Tech LLC, 528 F. 3d at 879-80; see also SanDisk Corp. v.

STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007).

The Federal Circuit, however, reaffirmed both that reasonable

apprehension remained one of the ways of determining declaratory

jurisdiction, Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d

1329, 1336 (Fed. Cir. 2008), and that the second prong continued

to be part of the jurisdictional analysis.  Cat Tech LLC, 528 F.
3d at 880.

The "meaningful preparation" requirement of the second
prong amounts to proof of "significant, concrete steps to
conduct infringing activity" in order for the dispute to be
immediate and real and meet the Article III case or controversy
requirements.  Id.  "A party may not obtain a declaratory
judgment merely because it would like an advisory opinion on
whether it would be liable for patent infringement if it were to
initiate some merely contemplated activity."  Matthews Int'l
Corp. v. Biosafe Eng'g, LLC, 695 F.3d 1322, 1329 (Fed. Cir.
2012) (citing Cat Tech LLC, 528 F. 3d at 881).  For the dispute
to be immediate, the Defendants need not show actual
infringement; however, where it is "unclear" when potential
infringing activity would occur, the dispute lacks the required
immediacy to satisfy the Article III requirements.  Id. at 1330.

In this case, the Defendants argue that the district court
has jurisdiction over their counterclaims pursuant to 28 U.S.C.
§§ 1331 and 1338(a).  Defs.' Ans. 30.  The Defendants bear the
burden of proving the existence of declaratory judgment
jurisdiction at the time they filed the counterclaims.  See
Benitec Austl., Ltd v. Nucleonics, Inc., 495 F. 3d 1340, 1344
(Fed. Cir. 2007).

The Court has already concluded that the intellectual
property with which the Defendants are alleged to have
"abscond[ed]" is not patents.  At most, the Plaintiffs allege
that Nagel has directed ELC to fail to protect its patents as
part of his plan to practice ELC's patented technologies
unencumbered.  This allegation lacks any temporal dimension.[15]
See Benitec Austl., Ltd, 495 F. 3d at 1349 (dispute not
immediate where potential infringer "merely expect[ed] to begin
[potentially infringing work] shortly" (internal quotation marks
omitted)); Sierra Applied Scis., Inc. v. Advanced Energy Indus.,
Inc., 363 F.3d 1361, 1378-79 (Fed. Cir. 2004) (the longer the
period between the filing of the declaratory judgment complaint
and the beginning of the infringing activity, the less immediate
the dispute); Lang v. Pac. Marine & Supply Co., 895 F.2d 761,
764 (Fed. Cir. 1990) (dispute not immediate where potential
infringing product would not be finished until at least nine
months after filing of declaratory judgment complaint).  The

---

[15] The Defendants counter that the Plaintiffs' previous
emergency requests for a temporary restraining order and
preliminary injunction prove that the infringing activity is
alleged to be imminent.  Defs.' Opp'n 8-9. The Plaintiffs'
emergency injunction concerns, however, are centered on the
effect (which needs to be alleged to obtain a preliminary
injunction) of the removal and loss of ELC's and CET's
confidential information and the loss of protection for ELC's
patents on the value of ELC and CET, on their "very existence."
State Ct. R., Ex. 1, Ex. A, Pls.' Emergency Mot. TRO Prelim.
Inj. 5, ECF N0. 39-1.

Defendants have not otherwise provided any evidence that they
have taken any preliminary steps to infringe ELC's patents or
that they expect to infringe the patents at some clear point in
the future -- they base their declaratory judgment jurisdiction
request on the Plaintiffs' generic allegations in the complaint.
Defs.' Ans. 30-32.  Without more, the Court concludes that the
dispute fails the immediacy requirement, and thus, fails to meet
the Article III case or controversy test.

**III. CONCLUSION**

For the reasons set forth above, the Court **DENIED** the
Defendants' motion to remove, ECF No. 1, and **GRANTED** the
Plaintiffs' motion to remand to state court, ECF No. 32.
Accordingly, on January 22, 2016, ECF No. 43, the case was
ordered remanded to Associate Justice Peter B. Krupp sitting in
the Middlesex Superior Court.

**SO ORDERED.**

_William G. Young_
WILLIAM G. YOUNG
DISTRICT JUDGE